UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: ENRIQUE FERNANDEZ, JR. and　　　　　　　　No. 11-10783-j13
　　　　RENEE ANTOINETTE FERNANDEZ,

### MEMORANDUM OPINION AND ORDER
### HOLDING SPECIAL COUNSEL MATTHEW ORTIZ
### IN CONTEMPT AND IMPOSING CIVIL CONTEMPT SANCTIONS

THIS MATTER is before the Court on the Order to Show Cause Why Special Counsel for Debtors Should Not be Held in Contempt and Sanctioned for Failure to Remit Settlement Proceeds to Chapter 13 Trustee ("Order to Show Cause"). *See* Docket No. 168. The Order to Show Cause directed special counsel, Matthew Ortiz, to appear *in person* before the Court on August 2, 2016 to show cause why he should not be sanctioned for failing to comply with the Court's Amended Order Directing Special Counsel to Send Settlement Proceeds Check to Chapter 13 Trustee ("Order"). *See* Docket No. 161.

Kelley L. Skehen, Chapter 13 Trustee; and Alice Nystel Page, on behalf of the United States Trustee, appeared at the final hearing on the Order to Show Cause. Matthew Ortiz failed to appear. The United States Trustee filed a brief in support of the Court's Order to Show Cause, urging the Court to issue appropriate sanctions against special counsel. *See* Docket No. 176.[1] For the reasons explained below, the Court will hold Matthew Ortiz in contempt and impose civil sanctions against him based on his continued delay in remitting the settlement proceeds to the Chapter 13 Trustee for nearly a year, his failure to comply with the Order, and his failure to appear at the final hearing on the Order to Show Cause.

---

[1] The United States Trustee suggested that the Court order appropriate monetary sanctions, such as interest to unsecured creditors caused by the delay in payment of their claims, payment of any litigation costs incurred by the Chapter 13 Trustee, or disgorgement of a portion of Mr. Ortiz's attorney's fees, as well as non-monetary sanctions, such as suspension of Mr. Ortiz from practice before this Court, or requiring Mr. Ortiz to attend continuing legal education courses.

FACTS AND PROCEDURAL HISTORY

Debtors Enrique Fernandez, Jr. and Renee Antoinette Fernandez filed a voluntary petition under Chapter 7 of the Bankruptcy Code on February 25, 2011. Debtors converted their case to Chapter 13 on September 27, 2011. *See* Docket No. 23. In January of 2012, The Ortiz Law Firm PC (Matthew Ortiz) was employed as special counsel for the Debtors to represent Enrique Fernandez in a human rights violation claim against the New Mexico Department of Corrections. *See* Order Approving Motion to Employ the Ortiz Law Firm PC, Attorney for Debtor for Human Rights Claim (Docket No. 71). Debtors confirmed their Chapter 13 Plan on February 9, 2012. *See* Order Confirming Chapter 13 Plan (Docket No. 75). The confirmed Chapter 13 Plan provided, among other things, that the Debtors would not receive a discharge upon plan completion or otherwise. *Id.* at ¶ 4.

Debtors settled their claims against the New Mexico Department of Corrections and, on July 24, 2015, filed a Motion for Authorization to Settle Claims and Distribut[e] Proceeds. *See* Docket No. 144. The Court approved the settlement on September 1, 2015. *See* Order Granting Debtors' Motion for Authority to Settle Claims and Distribute Proceeds ("Settlement Order") – Docket No. 147. Debtors settled their claims for a total of $94,000, with $47,000 apportioned to Enrique Fernandez and $47,000 apportioned to Rene Fernandez. The net proceeds from the settlement were as follows: $29,045.39 for Enrique Fernandez, and 29,270.90 for Rene Fernandez. *Id.* The Settlement Order required that the proceeds from the settlement be distributed in accordance with the settlement statement, and not directly to the Debtors. *Id.* In other words, the net settlement proceeds were to be submitted directly to the Chapter 13 Trustee for distribution to creditors under the Debtors' confirmed Chapter 13 plan.

By May of 2016, the Chapter 13 Trustee had not received the settlement proceeds. She filed a Motion for Order to Show Cause Why Special Counsel for the Debtors, Matthew Ortiz, Should not be Held in Civil Contempt of Court ("Motion for Order to Show Cause"). *See* Docket No. 150. The Court held a status conference on the Motion for Order to Show Cause on May 23, 2016. *See* Docket No. 158. At the status conference, Mr. Ortiz informed the Court that he mistakenly sent the checks representing the net settlement proceeds to the Chapter 13 Trustee using the incorrect address. Mr. Ortiz agreed to stop payment on the checks, reissue them, and send the re-issued checks to the Chapter 13 Trustee by overnight mail to her lockbox in Tennessee.

On the Chapter 13 Trustee's request, the Court set a final hearing on the Motion for Order to Show Cause on July 12, 2016. *See* Docket No. 159. At the final hearing, the Chapter 13 Trustee represented to the Court that she received one check for $29,270.90 through the lockbox on June 1, 2016, but that she still had not received the remainder of the net settlement proceeds in the amount of $29,045.39. The cover letter accompanying the check the Chapter 13 Trustee received stated that two checks were enclosed. Only one check was received.

At the hearing on the Motion for Order to Show Cause, Matthew Ortiz for the first time raised an issue regarding the tax consequences attributable to the distribution of the net proceeds from the settlement. The Court ruled at the close of the hearing that Mr. Ortiz was required to remit the remaining settlement proceeds so that the Chapter 13 Trustee would receive them by Friday July 15, 2016. Following the hearing on the Motion for Order to Show Cause, the Court memorialized its oral ruling by entering the Order which directed Mr. Ortiz to remit $29,045.39 representing the remainder of the settlement proceeds to the Chapter 13 Trustee at the Chapter 13 Trustee's lockbox, so that the funds are received by July 15, 2016. *See* Docket No. 161. The

3

Order gave notice to Mr. Ortiz that the Court would hold him in contempt and issue appropriate sanctions if he failed to comply with the Order, absent a showing of good cause.[2]

Mr. Ortiz did not comply with the Order. The Chapter 13 Trustee filed a Notice of Non-Receipt of Funds on July 18, 2016, representing that she did not receive the remaining net settlement proceeds by the July 15, 2016 deadline. *See* Docket No. 167. Consequently, the Court issued the Order to Show Cause on July 20, 2016 directing Mr. Ortiz to appear *in person* at a final hearing on August 2, 2016 to show cause why the Court should not hold him in contempt based on his failure to comply with the Order. *See* Docket No. 168. On July 26, 2016, the Chapter 13 Trustee notified the Court that she received a check for the remaining net settlement proceeds in the amount of $29,045.39 on July 21, 2016. *See* Notice of Receipt of Funds (Docket No. 170. She posted the funds to the Debtors' Chapter 13 bankruptcy case on July 22, 2016. *Id.* The Chapter 13 Trustee received the funds six days *after* the deadline imposed by the Order.

Matthew Ortiz failed to appear at the final hearing on the Order to Show Cause held August 2, 2016. He did not contact the Court before or after the hearing.

DISCUSSION

The Bankruptcy Court has authority to issue sanctions for civil contempt based on an attorney's failure to comply with an order of the Court. *See Mountain America Credit Union v. Skinner (In re Skinner),* 917 F.2d 444, 447 (10th Cir. 1990) ("holding that section 105(a)[3] empowers

---
[2] The Order also provided all parties with an opportunity to file an appropriate motion regarding any genuine issue concerning the issuance of a Form 1099 with respect to the net settlement proceeds, and, if such motion is filed, directed the Chapter 13 Trustee to hold the settlement funds until further order of the Court. Debtors, by and through their bankruptcy counsel, Steve H. Mazer, filed a Motion to Require Chapter 13 Trustee to Set Aside Estimated Tax Liability Arising from Receipt of Settlement on July 13, 2016. *See* Docket No. 163. The Chapter 13 Trustee objected to the motion. *See* Docket No. 173.

[3] Section 105(a) provides:
    The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest

4

bankruptcy courts to enter civil contempt orders") (citations omitted); *In re Armstrong,* 304 B.R. 432, 438 (10th Cir. BAP 2004) (acknowledging that "the Tenth Circuit has held that bankruptcy courts have statutory authority pursuant to 11 U.S.C. § 105 to issue civil contempt orders") (citing *Skinner,* 917 F.2d at 447); *Gonzales v. Potter (In re Potter),* 2008 WL 1777843 (Bankr.D.N.M. Apr. 16, 2008) (stating that "[t]his Court has the power to enter sanctions for civil contempt based on an attorney or party's violation of a prior court order.") (citing 11 U.S.C. § 105) (remaining citation omitted).[4] "To be held in contempt, a court must find that the party violated a specific and definite court order and the party had notice of the order." *In re Lucre Mgmt. Group, LLC,* 365 F.3d 874, 875 (10th Cir. 2004) (citation and internal quotation marks omitted). The Court also has the inherent authority "to maintain order and confine improper behavior" that occurs before it. *Jones v. Bank of Santa Fe (In re Courtesy Inns, Ltd., Inc.),* 40 F.3d 1084, 1089 (10th Cir. 1994) *See also, Law v. Siegel,* 134 S.Ct. 1188, 1194, 188 L.Ed.2d 146 (2014) (stating that the bankruptcy court has statutory authority under § 105, "[a]nd it may also possess 'inherent power . . . to sanction 'abusive litigation practices.'") (quoting *Marrama v. Citizens Bank of Mass,* 549 U.S. 375-376, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007) (additional internal quotation marks omitted)); *In re Lehtinen,* 564 F.3d 1052, 1058 (9th Cir. 2009) ("Bankruptcy courts generally have the power to sanction attorneys pursuant to (1) their civil contempt authority under 11 U.S.C. § 105(a); and (2) their inherent sanction authority.") (citation omitted).

Matthew Ortiz is in contempt for violating the Order. He did not send the remaining settlement proceeds to the Chapter 13 Trustee by the July 15, 2016 deadline. He missed the

---

shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

[4] *See also, In re Scrivner,* 535 F.3d 1258, 1263 (10th Cir. 2008) (acknowledging that 11 U.S.C. § 105 "grants bankruptcy courts the power to sanction conduct abusive of the judicial process") (internal quotation marks and citation omitted).

5

Case 11-10783-j13    Doc 184    Filed 09/27/16    Entered 09/27/16 16:45:59 Page 5 of 8

deadline by nearly a week. He had adequate notice of both the requirement to remit the remaining settlement proceeds to the Chapter 13 Trustee and the deadline. He was present at the hearing that resulted in the entry of the Order. A copy of the Order was mailed to him at his address of record.

Mr. Ortiz is also in contempt for failing to appear at the Order to Show Cause hearing. He received notice of the Order to Show Cause which required his presence at the hearing in person. Yet, he nevertheless ignored the Court's Order to Show Cause and failed to appear at the hearing. He made no effort to contact the Court either before or after the final hearing on the Order to Show Cause. Having found Mr. Ortiz in contempt for failing to comply with the Order and for failing to appear at the Order to Show Cause, the Court must fashion an appropriate sanction.

A monetary civil contempt sanction must either compensate the injured party for losses resulting from the contemnor's conduct or must coerce compliance. *See Int'l Union, United Mine Workers of America v. Bagwell,* 512 U.S. 821, 829, 114 S.Ct. 2552, 2558, 129 L.Ed.2d 642 (1994) ("A contempt fine . . . is considered civil and remedial if it either 'coerce[s] the defendant into compliance with the court's order, [or] . . . compensate[s] the complainant for losses sustained.'") (quoting *United States v. United Mine Workers of America,* 330 U.S. 258, 303-304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947)); *O'Connor v. Midwest Pipe Fabrications, Inc.,* 972 F.2d 1204, 1211 (10th Cir. 1992) ("Sanctions for civil contempt may only be employed for either or both of two distinct remedial purposes '(1) to compel or coerce compliance to a court order . . . ; and (2) to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance[.]'") (quoting *Shuffler v. Heritage Bank,* 720 F.2d 1141, 1147 (9th Cir. 1983) (remaining citations omitted)). A compensatory civil sanction must be based on the suffering

6

party's actual loss. *O'Connor,* 972 F.2d at 1211 ("the amount of the fine must be based upon the complainant's actual losses sustained as a result of the contumacy") (citations and internal quotation marks omitted); *In re Reed,* 11 B.R. 258, 276 (Bankr.D.Utah 1981)("Actual loss is the measure of compensatory finds for civil contempt.") (citing *United States v. United Mine Workers,* 330 U.S. at 303-304).

Here, even though Mr. Ortiz's violation of the Order caused only a six-day delay, his actual delay in remitting the funds in accordance with the Settlement Order was nearly a year. Mr. Ortiz provided no reasonable explanation for such a lengthy delay. The net proceeds from the settlement were to be distributed to creditors under the terms of the Debtors' confirmed Chapter 13 plan. Because Mr. Ortiz did not remit the funds in a timely manner, creditors have been delayed in receiving payments on their claims. The Court will impose a civil monetary sanction against Mr. Ortiz, payable to the Chapter 13 Trustee for distribution to creditors under the terms of the Chapter 13 plan, in an amount equal to the interest on the settlement proceeds at the prime rate of 3.5% per annum[5] for the period of the delay.[6]

WHEREFORE, IT IS HEREBY ORDERED, that attorney Matthew Ortiz is sanctioned in the amount of $1,623.50 payable to the Chapter 13 Trustee within ten days of the date of entry of this order. The funds shall be sent to the Chapter 13 Trustee's lockbox: Chapter 13 Trustee,

---

[5] The Wall Street Journal prime rate of interest as of August 2016 is 3.5% per annum.

[6] The Court entered the Settlement Order on September 1, 2015. Mr. Ortiz remitted the first half of the settlement proceeds to the Chapter 13 Trustee on June 1, 2016. Mr. Ortiz remitted the second half of the settlement proceeds to the Chapter 13 Trustee on July 21, 2016. The Court will use September 10, 2015 as the beginning date for the calculation of the interest on the settlement proceeds.

| Settlement Amount | Per Diem Interest at 3.5% | Number of Days | Total Accrued Interest |
|---|---|---|---|
| $29,270.90 | $2.81 | 265 (9/10/15 – 6/1/16) | $744.65 |
| $29,045.39 | $2.79 | 315 (9/10/15 – 7/21/16) | $878.85 |
| | | **TOTAL** | **$1,623.50** |

Kelley Skehen, P.O. Box 454, Memphis, TN 38101). If Mr. Ortiz fails to pay the funds timely, the Chapter 13 Trustee may file a motion for entry of a judgment on the unpaid amount.

/s/ Robert H. Jacobvitz
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: September 27, 2016

COPY TO:

Mathew Ortiz
Special Counsel
The Ortiz Law Firm
PO Box 6078
Santa Fe, NM 87502

Steve H. Mazer
Attorney for Debtors
Regazzi Law, LLC
2501 Yale SE, Suite 204
Albuquerque, NM 87106

Kelley L. Skehen
Chapter 13 Trustee
625 Silver Ave. SW, Suite 350
Albuquerque, NM 87102

Alice Nystel Page
Office of the United States Trustee
PO Box 608
Albuquerque, NM 87103